UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICKI S. PIETRYKOWSKI,

    Plaintiff,

v.                                          Case No. 05-CV-72545

TRIMAC TRANSPORTATION SERVICES
AND NORMAN R. ST. PIERRE,

    Defendants.
                                       /

**OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Pending before the court is Defendants Trimac Transportation Services ("TTS") and Norman R. St. Pierre's "Motion for Summary Judgment" filed on April 28, 2006. The matter has been fully briefed and the court concludes that a hearing is unnecessary. See E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny the motion.

**I. INTRODUCTION**

Plaintiff Vicki Pietrykowski initiated this action on June 27, 2005, alleging that Defendants were liable in tort for the head, neck and back injuries that she suffered as a result of a car accident. The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendants contend that summary judgment is appropriate because Plaintiff's injuries are insufficient for recovery under Michigan no-fault law.

## II. BACKGROUND

On December 10, 2005, Plaintiff was driving on I-94 in the right lane when she decelerated to about 55 mph to allow a flatbed truck onto the highway. (Pl.'s Dep. at 105-106, 108, Pl.'s Ex. 17, Defs.' Ex. 1; Traffic Crash Report at 2, Pl.'s Ex. 1.)[1] Defendant St. Pierre's semi-truck then rear-ended Plaintiff's vehicle. (*Id.* at 110.) The impact forced Plaintiff's body to lunge forward, backward, and to the side. (*Id.* at 111.) She did not recall if her head struck anything or if she lost consciousness, but she did state that she recalled being dizzy, light-headed, and unsure of what happened. (*Id.* at 111, 114, 153.)[2] An ambulance took Plaintiff to a hospital that gave her some unspecified medication, told her to follow up with a doctor, and discharged her a few hours later when her friend arrived to take her home. (*Id.* at 115-116.)

Plaintiff saw a doctor within a few days and complained of headaches and pain in her neck, head, back, hips and knees. (*Id.* at 118.)[3] She occasionally had headaches before the accident, but no neck or memory problems, and she had been seeing a chiropractor for about a month due to pain in the middle of her back that she claimed the accident later aggravated. (*Id.* at 31-33.) Before the accident, she visited a

---

[1]Because the court must view the evidence in the light most favorable to Plaintiff, different accounts of the accident, particularly those that allege Plaintiff came to a complete stop on the highway, will not be summarized.

[2]One of Plaintiff's doctor's reports indicated that in retrospect Plaintiff believed her forehead struck the steering wheel and that she may have lost consciousness. (Neuropsychological Evaluation of Dr. Sewick at 2-3, Pl.'s Ex 5.)

[3]Plaintiff has a history of back pain and sought chiropractic treatment in the past. (Pl.'s dep, at 32, 137, Pl.'s Ex. 17.)

chiropractor to treat the pain in the middle of her back, which included an occasion that was subsequent to another rear-end collision. (*Id.* at 32, 137-138.) Plaintiff experienced nausea and difficulty with sleeping, dizziness, balance and walking immediately after the accident, but had no memory problems or hallucinations. (*Id.* at 118-119.) Regarding balance, Plaintiff reports falling to her knees seven to ten times in the months following the accident and that she never used to fall like that. (*Id.* at 135-136.) She also experiences depression and has difficulty organizing her thoughts, bending and lifting. (*Id.* at 122-123.) She thought about hurting herself and spoke to some grief counselors after the accident. (*Id.* at 41-44.) In addition, because of nervousness, she started smoking again, which she had quit for five years. (*Id.* at 52.) She has had trouble with her hobby of playing guitar but that problem has been improving. (*Id.* at 124.) She used to participate in aerobics but has been unable to since the accident. (*Id.* at 125-126.) Similarly, she can no longer walk her dog, garden or go out with friends. (*Id.* at 149-150.) Plaintiff averred that after the accident she could only sit at home, watch television and cry. (*Id.* at 124-125.) Immediately after the accident, she needed help bathing and grooming. (*Id.* at 19-20.) Her daughter helped her with housework and running errands. (*Id.* at 23.)

     Plaintiff testified that she has difficulty turning her neck without moving her shoulders and described continuous shooting pains in her lower back that move through her hips and gives her tingling sensations in her toes and fingers. (*Id.* at 126-128.) She no longer owns a car and stated that she was unsure if she was capable of driving. (*Id.* at 128.) Her ability to walk and to lift within certain limits has improved. (*Id.* at 129-129.) She reports panic attacks as well as problems with concentration such as not

being able to articulate words that she knows and saying things that she does not intend to say.  (*Id.* at 134.)

During the summer before the accident, Plaintiff left her job at a supermarket because she was moving and because she planned to attend a missionary trip that was later cancelled.  (*Id.* at 75, 142-143.)  She attempted to return to her job, but it was filled and she instead sought work elsewhere.  (*Id.* at 142-144.)  She avers that every day she sought work and was unsuccessful.  (*Id.* at 144.)  Moreover, she exercised every day for 20 to 90 minutes and performed all of her own housework and personal hygiene.  (*Id.* at 145-147.)  After the accident, doctors told her to avoid bending, stooping, lifting, twisting, and other strenuous activity that were part of all the jobs she previously held and for which she previously applied.  (*Id.* at 25, 147-148.)  She testified that her doctors' restrictions still applied and stated that these activities were still painful for her.  (*Id.* at 148-149.)  Her doctors also restricted her from walking long distances and standing for long periods of time, which she believed was due to her back and neck injuries.  (*Id.* at 152.)  Her doctors told her that she suffered a compression fracture in her neck.  (*Id.* at 80, 153.)

Plaintiff claims that her head injury impaired her ability to manage her finances, read, and comprehend.  (*Id.* at 150.)  Some days she experiences ringing in her ears.  (*Id.* at 151.)  During her deposition, she had difficulty recalling the date of her divorce and attributed newly acquired memory problems to the accident.  (*Id.* at 6-7.)  She has not sought work because of her doctors' restrictions and because she does not have a car.  (*Id.* at 154.)  She thinks that she could no longer multi-task well and therefore could not return to work as a bartender or waitress.  (*Id.* at 66.)  Other than when she raised

4

her two children, she always worked outside the home and considered work a normal part of her life. (*Id.* at 154-155.) She began receiving governmental assistance about a year before the accident because she was unable to find work during that year. (*Id.* at 28-29, 71, 73.)[4]

According to objective methods of classification, one doctor concluded that Plaintiff's "overall level of neuropsychological test performance falls well within the organically impaired range." (Neuropsychological Evaluation of Dr. Sewick at 2-3, Pl.'s Ex. 5.) Dr. Sewick diagnosed cognitive, mood and pain disorders secondary to the injuries Plaintiff suffered. (*Id.* at 8.) He recommended "additional rehabilitation interventions, including cognitive rehabilitation, individual psychotherapy and psychiatric evaluation and treatment." (*Id.* at 9.) A different doctor diagnosed a closed-head injury, cognitive impairment in a number of areas, and also recommended cognitive rehabilitation and neurocognitive assessments. (1/17/06 Cognitive Evaluation of Dr. Klein, at 8, Pl.'s Ex 6; 12/6/05 Neuropsychiatric Evaluation, at 2, Pl.'s Ex. 6.) Several months after the accident, her attending physician diagnosed "dementia due to head trauma and major depressive disorder." (10/13/05 Attending Physician's Report of Dr. Sarcar, at 1, Pl.'s Ex. 7.) He could not give a date when Plaintiff would be able to return to work and stated that she had a lifetime condition that would require weekly therapist and monthly psychiatrist treatment. (Id.) A neurosurgeon who regularly diagnoses and treats spinal injuries concludes that Plaintiff, who has no significant history of spinal

---

[4]Plaintiff could not recall if she ever earned more than $10,000 in a year, stated that she paid her bills for a while with proceeds from the sale of her home, which she had to sell due to the terms of her divorce settlement, and began receiving financial assistance from her family when those proceeds were all spent. (*Id.* at 87-89, 91.)

injuries, suffered herniation of eight discs including one compression fracture and that the accident directly caused these injuries. (Aff. of Steven M. Rapp, M.D., ¶¶ 1-6, 11, Pl.'s Ex. 8.) Dr. Rapp avers that Plaintiff's spinal injuries were permanent and disabling and that they would require lifetime medical treatment. (*Id.* at ¶¶ 7-8.) He asserts that Plaintiff is incapable of work now or in the future and that she should be restricted from all activities that include bending, lifting, prolonged standing, twisting, pushing and pulling. (*Id.* at ¶¶ 9-10.)

Defendants, meanwhile, present divergent diagnostic impressions and conclusions of another doctor. (3/14/06 Letter of Raymond G. Mercier, M.D., Defs.' Ex. I.) Dr. Mercier concluded that Plaintiff had longstanding intellectual deficiencies due to poor academic performance and found no signs of an acquired brain injury. (*Id.* at 8.) He concluded that her cognitive rehabilitation was unnecessary and that her daily activities revealed no significant restrictions. (*Id.* at 8.) He found "chronic, longstanding intellectual dullness" and characterized her problems as personal in nature -- a lack of money, work, and a significant other -- and not due to the accident. (*Id.* at 8.) He claimed that she is not psychologically disabled and does not require household assistance. (*Id.* at 8.) Defendants also present a neuropsychological evaluation in which the doctor concluded that he found no brain injury (Neuropsychological Evaluation of Dr. Baker, Defs.' Ex. J.) Dr. Baker found no brain trauma, concluding that Plaintiff had poor coping skills but was otherwise capable of functioning at her pre-accident level without restrictions or assistance and could potentially return to work. (*Id.* at 8.) Finally, a third doctor reported that Plaintiff's spinal injuries were mild, did not

require medical intervention, and that she did not appear disabled or in need of any restrictions. (4/16/06 Letter of Dr. Higginbotham at 4, Defs.' Ex. K.)

### III.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material.  *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict - 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'") (citation omitted).  A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an

essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party. *Dunigan v. Noble*, 390 F.3d 486, 492 (6th Cir. 2004) ("[W]e must determine 'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.'"). The court does not weigh the evidence to determine the truth of the matter, but must decide if the evidence produced creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

### IV.  DISCUSSION

Under Michigan law, a person "remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of a body function, or permanent serious disfigurement." Mich. Comp. Laws § 500.3135(1). The court must decide as a matter of law whether Plaintiff's injuries meet the statutory threshold if either of the following conditions are met:

> (*i*) There is no factual dispute concerning the nature and extent of the person's injuries.
> (*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination as to whether the person has suffered a serious impairment of body function or permanent serious disfigurement.

8

*Id.* In the case of a closed-head injury, which Plaintiff claims, "a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury." *Id.*

The parties dispute the nature and extent of Plaintiff's injuries as well as whether they caused her to suffer a serious impairment of body function. It is, however, unnecessary for the court to decide these issues in the context of Plaintiff's closed-head injury because she met the specific requirement of the statute to create a question of fact regarding that injury. She presented sworn affidavits from two medical doctors who regularly diagnose and treat such injuries which stated that Plaintiff indeed may have suffered a serious neurological injury as a result of the accident. (Sarcar Aff. at ¶¶ 1-2, 4, Pl.'s Ex. 3; Klein Aff., at ¶¶ 1-2, 4, Pl.'s Ex. 4.) Dr. Sarcar avers that the effects of the injury include "chronic pain, anxiousness, dementia, memory loss and major depressive disorder among other serious impairments." (Sarcar Aff., at ¶ 5, Pl.'s Ex. 3.) Dr. Klein details "significant cognitive impairment in a number of areas of cognitive functioning . . . . [and] difficulty in areas which would include general processing of information, level of distractability, attention and concentration, as well as short-term memory." (Klein Aff. at ¶ 6, Pl.'s Ex. 4.) These affidavits provide a sufficient basis for allowing the finder of fact to consider Plaintiff's closed-head injury. Mich. Comp. Laws § 500.3135(1); *See Contra Churchman v. Rickerson*, 611 N.W.2d 333 (Mich. Ct. App. 2000) (holding that mere diagnosis of a closed-head injury due to trauma without indication of the degree of the

injury is insufficient).[5]  In this case, the affidavits unequivocally state, as the statute requires, that Plaintiff may have suffered a serious neurological injury.  Defendants' arguments concerning a lack of objective medical tests, such as x-rays and the like, to substantiate the existence of the closed-head injury go beyond the requirement of the statute and, in any event, invite the court to weigh the evidence, which is improper, rather than consider it in the light most favorable to Plaintiff.

Plaintiff's other injuries, primarily to her back, require fuller analysis under the statute pursuant to *Kreiner v. Fischer*, 683 N.W.2d 611 (Mich. 2004), which sets out the controlling standards for applying the statute.  Because the parties dispute the nature and extent of Plaintiff's injuries, the court turns to the second question of whether that dispute is immaterial to whether plaintiff suffered a serious impairment of body function. Mich. Comp. Laws § 500.3135(1)(ii).  A serious impairment of body function is defined as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life."  Mich. Comp. Laws § 500.3135(7).   More than a minor interruption in life is contemplated and the court must consider the effect of the impairment on Plaintiff's entire normal life.  *Kreiner*, 683 N.W.2d at 624-625.  If, in spite of any impingements, "the course or trajectory of the plaintiff's normal life has not been affected, then the plaintiff's general ability to lead his normal life has not been affected and he does not meet the serious impairment of body

---

[5]Although it is only unbinding persuasive authority, the court also recognizes a factually similar case where the court denied a defendant's summary judgment motion against a plaintiff that relied on a single affidavit alleging a closed-head injury. *Chiarot v Belcher*, No. 04-CV-73524, slip op. (E.D. Mich. June 23, 2005) (Steeh, J.).

function threshold." *Id.* at 625.  The impairment must be objectively manifested, because subjective complaints that are not medically documented are insufficient.  *Id.*  A comparison of a plaintiff's pre- and post-accident lifestyle may rely on the following nonexhaustive list of objective factors: (a) the nature and extent of the impairment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the extent of any residual impairment that is physician-imposed and not self-imposed, and (e) the prognosis for eventual recovery.  *Id.* at 626.

      The factual dispute regarding the nature of Plaintiff's back injuries is material to the question of whether Plaintiff suffered a serious impairment of body function.  A favorable view of the evidence for her presents a question of fact concerning the impact of her injuries on the course and trajectory of her life.  That question is apparent in the divergent doctors' opinions concerning what effects are due to the accident and what effects are self-imposed, as well as what the degree of those effects is.  Plaintiff's injuries were objectively manifested in the form of herniation of eight discs and a compression fracture of one of those discs.  Her injuries may have seriously impacted her ability to work, seek employment, manage her household, drive, and pursue leisure activities.  These effects, in the opinion of her doctors, will last a lifetime and will require continuing medical treatment.  The prognosis for recovery is uncertain, and Plaintiff may never be physically able to live her life substantially the way she lived it before the accident.

      Plaintiff's situation is therefore different from that of *Kreiner*, where the court ordered summary judgment because the named plaintiff missed no work, could still

perform his job even though he had to cut back his hours due to physical limitations, and could still hunt. *Kreiner*, 683 N.W.2d at 628; see also *McDanield v. Hemker*, 707 N.W.2d 211, 219 (Mich. Ct. App. 2005) (holding that summary judgment was improper against a plaintiff with head, neck, and back injuries who missed several months of work, required assistance from coworkers due to pain, curtailed household chores and hobbies, and needed years of medical tests and treatment because the course or trajectory of her life was "inextricably affected"). Viewed in the light most favorable to Plaintiff, the evidence presents a question of fact regarding whether plaintiff's spinal injuries constitute a serious impairment of body function in addition to her alleged closed-head injury. Summary judgment for Defendants is thus inappropriate.

## V.  CONCLUSION

IT IS ORDERED that Defendants' Motion for Summary Judgment   [Dkt. # 22] is DENIED.

    S/Robert H. Cleland  
    ROBERT H. CLELAND  
    UNITED STATES DISTRICT JUDGE

Dated:  July 13, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 13, 2006, by electronic and/or ordinary mail.

    S/Lisa Wagner  
    Case Manager and Deputy Clerk  
    (313) 234-5522